# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**STANDARD PROCESS, INC.,**

        **Plaintiff,**

  **v.**                                                                       **Case No. 06-C-843**

**DR. SCOTT J. BANKS,**

        **Defendant.**

## DECISION AND ORDER

Standard Process, Inc. ("Standard Process") filed a complaint against Dr. Scott J. Banks ("Dr. Banks") for trademark infringement and false designation of origin in violation of 15 U.S.C. §§ 1114(1) & 1125(a). Standard Process seeks permanent injunctive relief. Dr. Banks filed a motion for summary judgment, which is currently pending before the Court.

### BACKGROUND

Standard Process is engaged in the business of manufacturing and selling dietary supplements. Standard Process does not sell products directly to end-user consumers, but rather only sells its products generally to health care providers or other retailers that Standard Process approves. Its customers agree to not sell Standard Process's products ("SP Products") to other businesses, not to sell SP Products over the internet, and not to sell SP

Products to the general public in any manner except by licensed pharmacies and health clinics.

Dr. Banks is a chiropractor and nutritional counselor who practices in New York. He sells supplements from approximately 80 manufacturers in his clinic and through his website "www.spinelife.com." Standard Process authorized Dr. Banks to distribute its products in 1999, but on March 1, 2004, Standard Process terminated Dr. Banks's account because he sold SP Products over the internet. Nevertheless, Dr. Banks continued to sell unaltered SP Products on his website after his account was terminated by purchasing them from other Standard Process customers. Dr. Banks also continued to use the Standard Process trademarks and photographs of SP Products on his website.

On March 29, 2006, Dr. Banks received a letter from Standard Process's attorney that objected to Dr. Banks's continued use of the Standard Process trademarks and photographs of SP Products on his website. Standard Process's attorney told Dr. Banks that the continued use of those trademarks and photographs, and continued sale of SP Products, created the false impression that Dr. Banks was affiliated with Standard Process.

In response to the letter, Dr. Banks removed pictures of SP Products and all Standard Process logos from his website. Dr. Banks also placed a disclaimer in the first paragraph on the page that appears when a customer clicks the Standard Process link. The disclaimer states:

> Spinelife is not an authorized seller of Standard Process, Inc., products. Spinelife purchases Standard Process supplements from authorized third

parties for resale, and is in no way affiliated with, authorized, sponsored or related to Standard Process, Inc.

The disclaimer appears on all pages from which a customer may purchase SP Products.

Dr. Banks also sends e-mail solicitations to its customers. On numerous occasions in 2006 and 2007, Dr. Banks sent solicitations containing the following language:

> For 75 years, **Standard Process** has provided health care professionals with high-quality, nutritional whole food supplements. Our extensive collection of products supports the healthy functioning of endocrine, cardiovascular, digestive, hepatic, respiratory, skeletal, renal, and other physiological systems.

Some of these solicitations contained photographs of SP Products. The solicitations did not include a disclaimer.

## DISCUSSION

Summary judgment is appropriate if the evidence shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In order to establish trademark infringement, Standard Process must show (1) that it has a protectible trademark, and (2) a likelihood of customer confusion about the source of the customers' goods. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001). Standard Process must also demonstrate a likelihood of confusion in order to establish its false designation of origin claim. *See Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 592 (5th Cir. 1993) ("as with trademark infringement, the touchstone of a section 1125(a) unfair competition claim is whether the defendant's actions are 'likely to cause confusion.'"). There is no dispute that

3

Standard Process has protectible trademarks, and that Dr. Banks is selling SP Products over the internet without Standard Process's authorization. The only question is whether Dr. Banks is likely to confuse costumers into believing that he is an authorized retailer of SP Products.

As a general rule, trademark law does not apply to the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner. This rule is known as the "first sale doctrine," and it provides that "the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product." *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995); *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924); *see also* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 24 cmt. b (2008) ("[T]rademark owner cannot ordinarily prevent or control the sale of goods bearing the mark once the owner has permitted those goods to enter commerce.") However, the first sale doctrine does not protect unauthorized resellers who use other entities' trademarks when such use gives a reasonable impression that the resellers are authorized dealers for a product. *See Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1240-41 (10th Cir. 2006); *Trudeau v. Lanoue*, 2006 WL 516579, at *4 (N. Ill. March 2, 2006).

Dr. Banks's website does not create such an impression. It does not include any pictures of SP Products, and most importantly, it prominently displays a disclaimer in the first paragraph of the page where a customer may buy SP Products. The disclaimer explicitly states that Spinelife is not an "authorized seller" of SP Products and is not "affiliated with"

4

Standard Process. While the effectiveness of a disclaimer may generally be a question of fact, "a disclaimer expressly declaring that the seller is 'not affiliated' with the owner of the trademark or is 'not an authorized distributor' of the trademark owner's products has been held to be an effective means of preventing confusion in the minds of consumers as to affiliation with the owner of the trademark." *Graham Webb Int'l Ltd. Part. v. Emporium Drug Mart, Inc.*, 916 F. Supp. 909, 917 (E.D. Ark. 1995) (citing *Matrix Essential Inc. v. Emporium Drug Mart, Inc.*, 756 F. Supp. 280, 282 (W.D. La. 1991)).[1]

Dr. Banks's solicitations, on the other hand, do not include the disclaimer that he provides so prominently on his website. In addition, his solicitations include pictures of SP Products. The combination of those two factors is likely to cause confusion, but Dr. Banks has agreed to accept an injunction that prohibits him from using photographs of SP Products and that requires him to use a disclaimer. (Banks Second Decl. ¶ 3.) Accordingly, the Court will issue an injunction that orders Dr. Banks to maintain his current website that prominently displays the disclaimers and does not use any pictures or logos of SP Products and that requires him to do the same with any solicitations he sends as well.

Standard Process contends alternatively that such an injunction is not sufficient because Dr. Banks is not selling "genuine" SP Products. The products are "materially

---

[1] Standard Process attempts to introduce evidence of actual confusion, but it is insufficient. It relies on the testimony of Annie Gentil, a marketing coordinator, who alleges that "[f]rom 2004 to the present, Standard Process has received hundreds of calls from end users and SP Customers and other persons inquiring whether Banks is authorized to resell SP Products and inquiring why he is selling SP Products on the Internet." (Gentil Decl. ¶ 61.) Gentil does not relate, though, whether a majority of these calls came after April 2006, when Dr. Banks prominently displayed the disclaimer and removed all pictures and logos of SP Products from his website.

5

different," according to Standard Process, because unlike its policy of selling its products primarily to health care professionals who will give the supplements to patients only after a one-on-one consultation, Dr. Banks's website does not require a one-on-one consultation. That is to say, Standard Process argues that Dr. Banks's sale of its products without a one-on-one consultation undermines its quality control standards.

In order to demonstrate that Dr. Banks violated Standard Process's quality control standards to the point of compromising the genuineness of the products themselves, Standard Process must demonstrate that it (1) has established "legitimate, substantial, and nonpretextual quality control measures," (2) "abides by those procedures," and (3) "the non-conforming sales will diminish the value of the mark." *S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188, 205 (E.D.N.Y. 1997) (quoting *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986)). While Standard Process generally abides by its quality control measure of selling it products only to health care professionals, there is no dispute that the SP Products that Dr. Banks sells are unaltered. The only issue, therefore, is that customers do not receive a one-on-one consultation when they buy the products over the internet. Yet, when the customer makes a purchase on the internet, the customer does not expect that he will receive individualized consultation. There is not a latent defect due to a failure to observe a quality control measure of the product itself that the customer could not detect. As a result, there is no risk of costumer confusion and, as such, Standard Process's argument is unavailing. *See S&L Vitamins, Inc.*, 521 F. Supp. 2d at 205;

6

*Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 591 (5th Cir. 1993) ("No customer who went to Emporium to buy Matrix products was confused or deceived as to whether they were getting a cosmetologist's consultation with their purchase."); *Graham Webb*, 916 F. Supp. at 916 ("It is of no import that the Graham Webb products are being sold unaccompanied by professional consultation.")

Standard Process also alleges that Dr. Banks is liable for trademark infringement because of "initial interest confusion." *See Promatek Indus., LTD v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002). "Initial interest confusion" occurs when a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated. *Id*. For example, in *Promatek*, the plaintiff used a direct competitor's trademark in its metatags. A metatag is HTML (Hyper Text Markup Language) code that describes the content of a website, and search engines used to use them to identifying the content of a website. The Seventh Circuit found that the use of the competitor's trademark in the plaintiff's metatags diverted customers to the plaintiff's website and likely caused customer confusion. *Id*.

Like the plaintiff in *Promatek*, Dr. Banks used Standard Process trademarks in the metatags of his website. However, today "modern search engines make little if any use of metatags." 4 J. Thomas McCarthy on Trademarks and Unfair Competition § 25:69 (4th ed. 2003). As more and more webmasters "manipulated their keyword metatags to provide suboptimal keyword associations, search engines progressively realized that keyword

7

metatags were a poor indicator of relevancy."[2] Accordingly, search engines today primarily use algorithms that rank a website by the number of other sites that link or point to it. *See* 4 McCarthy on Trademarks § 25:69.

In any event, even if search engines still made significant use of metatags, this case is different than *Promatek*. Consumers who enter "Standard Process" in a search engine may be diverted to Dr. Banks's website where, unlike the plaintiff's site in *Promatek*, it actually provides an opportunity to purchase the trademark holder's goods. Dr. Banks is not a direct competitor to Standard Process. Consumers will still be able to purchase unaltered SP Products on his site, so the likelihood of consumer confusion is not present here like it was in *Promatek*.

---

[2] *See* E. Goldman, *Deregulating Relevancy in Internet Trademark Law*, 54 Emory L. J. 507, 567 (2005).

8

Case 2:06-cv-00843-RTR   Filed 04/18/08   Page 8 of 9   Document 63

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Banks's Motion for Summary Judgment (Docket No. 28) is **GRANTED**, in part, and **DENIED**, in part. Dr. Banks is hereby permanently **ENJOINED** from using Standard Process trademarks on his website, solicitations, or other advertisements if his website, solicitations, or other advertisements do not include a prominently displayed disclaimer stating that he is not affiliated with Standard Process and that he is not an authorized seller of SP Products.

The clerk is directed to enter judgment and close this case accordingly.

Dated at Milwaukee, Wisconsin this 18th day of April, 2008.

**BY THE COURT**

s/ Rudolph T. Randa
**Hon. Rudolph T. Randa
Chief Judge**